Marshall, C. J.
The question before this court is upon the correctness of the judgment of the court of common pleas, and inasmuch as this cause was heard in the court of common pleas upon appeal from the appraisal of benefits made by the board of appraisers, confirmed by the conservancy court, it is important to inquire into the character of the appeal. From Section 6828-34, General Code, *83 we quote: “The appeal shall be from the award of compensation or damages or benefits, or one or more of them, but from no other part of the decree of the court.”
In the same section it is provided that upon such appeal the directors shall begin condemnation proceedings in the court of common pleas of said county in all respects in accordance with the statute regulating appropriations by other than municipal corporations, and the court is given full jurisdiction to act. The same section further provides that a jury shall be impaneled according to law to try the issue presented. The interpretation placed upon the section above quoted and referred to by the court of appeals was that the appeal entitled the appellant to a broader scope of inquiry than the mere ascertainment of the value of the property and the height of the flood water; that the plan of the board of appraisers for arriving at the proper assessment by a system of percentages was not conclusive, and that the plan itself should have been submitted to the jury for its determination as to whether it was reasonable or unreasonable.
While it is true that a jury was required to be impaneled to try the issue presented, the statute is equally specific that the cause was to be heard in the court of common pleas and that the suit should proceed in accordance with the statute regulating appropriation proceedings. It is necessarily implied that the jury was to be presided over by a court to pass upon admissibility of evidence, and to propound rules for its deliberate and orderly action. It is very evident therefore that the jury was not made sole arbiter of the entire question, but as *84 in all other cases where juries are properly impaneled the jury was to determine the facts under proper rules and instructions laid down by the court. We are of the opinion that the court of appeals misconceived the true relation between court and jury.
The fundamental proposition upon which the' whole structure of our system of jurisprudence rests is that the court decides all questions' of law. Statutes are construed, contracts and other written instruments are interpreted, evidence admitted or excluded, in accordance with long-established rules by the court alone. It is a corollary to this proposition that in those cases where a jury is properly employed, the jury decides only questions of fact. The jury must not be left to grope blindly in quest of the truth, but should be safeguarded by being permitted to hear only such testimony as is material and pertinent to the issue, and on final submission the court should define the issues, distinguish law and fact, instruct the jury as to the ultimate facts to be determined, and, above all, lay down rules for its guidance in determining such facts. In appropriate cases the jury should be instructed upon proximate cause, burden of proof, preponderance, measure of damages, presumptions, and a score of other subjects in accordance with rules and principles which have been found by experience and long-continued usage to be sound and salutary. No one would contend that after the court has propounded a rule governing some feature of the question at issue, the jury should be instructed that it should first determine whether the rule laid down by the court is reasonable.
*85 The foregoing observations have direct application to the case nr vr consideration. The fact to be determined was the value of the benefits to the particular property, or in other words the fair and equitable assessment, not particularly and solely what the improvement was worth to her property, but assuming that the entire improvement was worth all it cost to the whole of the property being assessed for its payment, what was the fair proportion, on a basis of equality and uniformity, to be assessed against the property of appellant? It is elementary that assessments must be made pursuant to a rule of equality and uniformity. Section 2, Article XII of the Ohio Constitution, provides in part: “Laws shall be passed, taxing by a uniform rule, all moneys,” etc. This constitutional provision does not literally apply to assessments, yet the principle applies to whatever method of appraisement is adopted and provides that assessments must be apportioned uniformly upon all property subject to assessment. This principle, and that the legislature has a wide discretion in providing for the apportionment of assessments provided they are apportioned upon a fair and reasonable basis, has been substantially declared in the following cases: Northern Indiana Rd. Co. v. Connelly, 10 Ohio St., 160, syllabus 2; Upington v. Oviatt, Treas., 24 Ohio St., 232, and Jaeger v. Burr, Admr., 36 Ohio St., 164.
There were more than seventy thousand properties subject to assessment to pay the costs and damages of the G-reat Miami valley improvement, and the majority of the property-owners have already submitted to the assessments made. A very large number of property-owners yet contend against the *86 judgment of the board of appraisers, and action in those cases depends upon the judgment of this court in the instant case. It would have been a physical impossibility to have impaneled seventy thousand separate juries possessing proper qualifications, and it is equally impossible to impanel a sufficient number of separate juries to try the appeals yet to be heard. Even if it were possible to impanel a sufficient number of juries, it would be utterly impossible for all of those juries, in the limited time they have for deliberation and discussion, to formulate a rule upon which to base their judgment. If it were possible to have the same jury pass upon all appeals such a jury could by giving sufficient time to the matter formulate a uniform rule. Even so, it is unlikely that the average jury would contain among its members a sufficient number of men skilled in such matters to frame a practical and efficient rule. If, on the other hand, we assume that the jury should not be required to frame a rule of its own, but merely to determine whether the rule employed by the board of appraisers was a proper rule, then if the jury should find by its verdict that the rule was not a proper one, without at the same time suggesting one that would in its judgment be proper, the entire work of the board of appraisers up to that point would have been nullified. It would seem to be a more sound doctrine for the rule to be left to the determination of the court, and if the court should be of the opinion that the rule was practical and efficient it should be submitted to the jury for its guidance, subject to review on error in the court of appeals and possibly in the supreme court.
*87 Section 2, Article XIV, requires that justice shall be administered by a uniform mode of proceeding, and Section 2'6, Article II, provides that all laws of a general nature shall have uniform operation throughout the state. All of these constitutional provisions, while not having particular and specific application, nevertheless clearly point the way toward uniformity, and uniformity can only be brought about by adopting rules.
We think, therefore, that the rule employed by the board of appraisers became a principle of law to be passed upon by the court and not by the jury. Tt may be conceded that the conservancy act did not confer upon the board of appraisers the power to formulate a rule iu express terms, neither did the conservancy act itself provide a rule. But inasmuch as the power of making appraisement was delegated to a board of appraisers, the board must be held to have inherent power to adopt proper rules to make its action equal and uniform.
The question of power in the board of appraisers, and whether such power was properly delegated by the legislature, was the subject of discussion in the case of County of Miami v. City of Dayton, 92 Ohio St., 215. On pages 234 and 235 of the opinion by Wanamaker, J., it is clearly shown that the legislature did not exceed its power in the maimer provided for making assessments. It is of course essential that there be equality and uniformity in making assessments, but it does not follow that there must be exactness. In nearly all street improvements, provided for by municipal legislation, the assessments are made by levy of a fixed sum upon each foot front *88 of property abutting upon the improvement, and the municipal legislation is made to carry the declaration that the several pieces of property are specially benefited to the extent of'the assessment so levied. In a majority of such cases a careful analysis of the condition would disclose that some properties are very greatly benefited "and others but slightly; that the assessment while uniform in theory is arbitrary in fact; and yet the validity of that mode of assessment is' no longer questioned or even criticised. A more favorable situation is presented by the provisions of the conservancy act. Section 6828-12, General Code, provides for the preparation of a plan for the proposed improvement, which plan must necessarily be drawn under the supervision of competent engineers,'and it is further necessary that such plan, if objected to, must be submitted to and receive the approval of the court in which the district is incorporated. Section 6828-26 provides for a detailed appraisal of benefits by SAvom appraisers, and Section 6828-27 requires confirmation of such appraisals by the court. " It is evident, therefore, that unusual precautions have been taken to insure assessments according to benefits. The mode and manner thus provided for appraising benefits as the basis of assessments are warmly commended in County of Miami v. Dayton, supra, at page 228.
In the opinion of the court of appeals on file in this ease it appears that the court has taken occasion to warmly praise the “flooding factor” plan employed by the board of appraisers, which was adopted by the conservancy court and afterward applied by the court of common pleas on appeal, and which was made the basis of the charge of the *89 court, and it therefore appears that at no time has the' plan itself been criticised, neither will it be presumed that the jury itself would have found any fault with such plan. To the commendation of the plan thus used and commended throughout this cause in the lower courts, we have already added our testimonial. The plan should be treated as a real rule having the force of a legal rule to govern all assessments made to pay the costs and damages of this improvement. It was also found by the court of appeals that the court of common pleas erred in ruling out two questions during the course of the trial on appeal. The first question was as to whether the property was not substantially as good after the flood as before. The other question was as to the expense of cleaning up the houses subsequent to the flood. We think it was not error to reject such testimony, because the question before the court was as to the reasonableness of the assessment to pay for an improvement, not for the purpose of repairing the damages of the flood of 1913 but to provide against the recurrence of similar floods for all time to come. This improvement in the Great Miami valley was doubtless made upon the assumption that similar floods might occur at intervals through all future time, and it was not the dominant idea that it would merely save the expense of cleaning up houses but rather that properties would be rendered more valuable and the community a better and safer place to live if such comprehensive measures were taken for their protection. It would not be profitable to enter into all the considerations which prompted the making of this improvement, but it is a matter of general *90 knowledge that large manufacturing institutions would not locate, neither would they long remain, in any community without protection against such disastrous occurrences as the flood of 1913. The conclusion we have reached therefore is that the jury was properly instructed in the court of common pleas and that the testimony above referred to was properly excluded. The judgment of the court of appeals will therefore be reversed and that of the common pleas affirmed.

Judgment reversed.

Johnson, Hough and "Wanamaker, JJ., concur.